## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

FILED
JAMES BONINI
CLERK

11 JUL 13 A 11: 20

U. S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST DIV. COLUMBUS

| | |
|---|---|
| **Omar Alomari**<br>448 Glenside Lane<br>Powell, Ohio 43065 | Case No. **2:11 cv 613** |
| Plaintiff, | Judge **JUDGE MARBLEY** |
| v. | Magistrate Judge |
| **Ohio Department of Public Safety**<br>1970 West Broad Street<br>Columbus, Ohio 43218-2081 | **MAGISTRATE JUDGE DEAVERS** |
| And | |
| **Thomas P. Charles**<br>In His Official Capacity as Director of<br>Ohio Department of Public Safety<br>1970 West Broad Street<br>Columbus, Ohio 43218-2081 | **COMPLAINT**<br>**(Jury Demand Endorsed Hereon)** |
| **Agent for Service of Process for**<br>**Defendant Ohio Department of Public Safety**<br>**And Defendant Thomas P. Charles**<br>    Mike DeWine, Ohio Attorney General<br>    30 E. Broad Street, 17th Floor<br>    Columbus, Ohio 43215 | |
| And | |
| **Thomas J. Stickrath**<br>Personally and In His Official Capacity as former<br>Director of Ohio Department of Public Safety<br>1560 State Route 56 SW<br>P.O. Box 365<br>London, Ohio 43140 | |
| And | |
| **William F. Vedra, Jr.**<br>Personally and In His Official Capacity as former<br>Director of Ohio Homeland Security<br>2417 Marthas Wood<br>Grove City, Ohio 43123-8481 | |
| Defendants. | |

## I.   INTRODUCTION

1.      This is an action for compensatory, non-economic, and punitive damages as well as injunctive relief arising from the unlawful termination of Plaintiff Omar Alomari by Defendant Ohio Department of Public Safety, Defendant Thomas Stickrath and Defendant William J. Vedra, Jr. on June 29, 2010. Defendants terminated Plaintiff's employment because of his race, national origin/ethnicity and religion and in retaliation for opposing biased counterterrorism trainings. Plaintiff complained that counterterrorism trainings funded by the U.S. Department of Homeland Security through grants distributed by Ohio Homeland Security, a division of Defendant Ohio Department of Public Safety, contained inaccurate and nonfactual information asserting that all Central Ohio Muslims and Arabs were terrorists or terrorism sympathizers that should be treated as suspects.

## II.  JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over all Counts, pursuant to 28 U.S.C. §1331, as this is a civil action involving claims brought pursuant to the laws and Constitution of the United States.

3.      Venue is proper pursuant to 28 U.S.C. §1391, because Defendant Ohio Department of Public Safety is located and operates in Columbus, Ohio, and the facts and actions giving rise to the causes of action occurred in Columbus, Ohio, which is situated within the Southern District of Ohio, Eastern Division.

## III. PARTIES

4.      Plaintiff Omar Alomari is a natural person residing in Delaware County, Ohio.

5.      Defendant Ohio Department of Public Safety (ODPS) is an agency of the State of Ohio responsible for the protection of the public through education, prevention, technology and

2

enforcement activities. Defendant ODPS is responsible for protecting the safety and security of Ohioans through several divisions, including Ohio Homeland Security (OHS). At times relevant to this Complaint, Defendant ODPS employed Plaintiff Alomari until his termination on June 29, 2010.

6.      Defendant Thomas P. Charles is the current Director of Defendant Ohio Department of Public Safety and is named as a Defendant herein in his official capacity for purposes of injunctive and non-economic relief.

7.      Defendant Thomas Stickrath was the Director of Defendant Ohio Department of Public Safety from May 2010 to January 2011 and held that position at the time of Plaintiff's termination from ODPS and other times relevant hereto. At all times material to this case, Defendant Stickrath acted under color of state law. Defendant Stickrath is being sued personally and in his official capacity as former Director of OPDS.

8.      Defendant William Vedra was the Executive Director of Ohio Homeland Security at the time of his departure from ODPS in January 2011, a position that he held since June of 2007. Also during that time, Defendant Vedra was Plaintiff's direct Supervisor and held that position at the time of Plaintiff's termination from ODPS and other times relevant hereto. At all times material to this case, Defendant Vedra acted under color of state law. Defendant Vedra is being sued personally and in his official capacity as former Director of OHS.

## IV.    FACTS COMMON TO ALL COUNTS

9.      Plaintiff was born in Jordan in 1950 and immigrated to the United States of America in 1978. Plaintiff's race and ethnicity is Arab. Plaintiff is Muslim and speaks approximately seven (7) languages.

3

10.     Beginning in November 2005, Defendant hired Plaintiff to be a liaison between OHS and Muslim communities on a contractual basis. Plaintiff's duties included, but were not limited to, building productive relationships between OHS, law enforcement and Arab and Muslim communities. In addition, Plaintiff researched and authored publications on Arab and Muslim communities, presented educational information to law enforcement on cultural competency issues and attended conferences and cultural events on behalf of OHS.

11.     During October of 2006, then-OHS Director John Overly advised Plaintiff that Defendant ODPS intended to create a full-time, permanent position for the Multicultural Relations Officer.

12.     On or about October 16, 2006, Defendants officially hired Plaintiff as its Multicultural Relations Officer.

13.     During June of 2007, Defendant Vedra became the new Director of OHS and directly supervised Plaintiff.

14.     Beginning in 2007, Defendant ODPS began receiving public records requests regarding Plaintiff and his employment.

15.     During 2008, Defendant ODPS's legal office received a letter from an attorney attacking Plaintiff's work, including a brochure that Plaintiff authored, *Culture Guide to Arabic and Islamic Cultures*.

16.     After receiving the letter, OHS received numerous telephone calls questioning the purpose and legitimacy of OHS's *Culture Guide to Arabic and Islamic Cultures*, including one caller comparing the guide to Nazi propaganda and another caller questioning when a guide about Christianity would be produced.

4

17.     In November 2008, Plaintiff conducted two presentations for OHS's Terrorism Liaison Officers. After Plaintiff's presentations, another presenter made blanket accusations that Central Ohio Muslims were linked with international terrorist groups.

18.     Defendants used U.S. Department of Homeland Security funds for the November 2008 training for its Terrorism Liaison Officers.

19.     After the training, Plaintiff advised Director Vedra of the presenter's comments, stating that such representations placed OHS in a negative light. Additionally, Plaintiff complained that type of presentation undermined OHS's outreach efforts to Ohio's diverse communities.

20.     In 2009, a member of the Central Ohio Terrorism Early Warning Group (TWEG) stated that, "No one knows what Omar does when he goes out and meets with the communities. He could be passing classified information to these people."

21.     Central Ohio TWEG is responsible for information sharing and intelligence fusion and serves as the focal point for analyzing the strategic and operational information needed to respond to terrorism in Central Ohio. Central Ohio TWEG receives U.S. Department of Homeland Security funds through grants distributed by OHS.

22.     Beginning in 2009, U.S. Department of Homeland Security funds were being used to provide counterterrorism trainings that contained inaccurate and nonfactual information asserting that all Central Ohio Muslims and Arabs were terrorists and/or terrorism sympathizers that should be treated as suspects. In addition, the trainings included a picture of Plaintiff as an example of a terrorist sympathizer.

23.     Plaintiff regularly complained to Defendant Vedra that the counterterrorism trainings, paid for with U.S Homeland Security funds distributed through OHS, contained

inaccurate and nonfactual information and advocated for and attempted to legitimize ethnic, racial, and religious profiling of Muslims and Arabs in direct contradiction to the mission of the U.S. Department of Homeland Security and Ohio Homeland Security, as well as the United States Constitution.

24.     In addition, Plaintiff complained to Defendant Vedra that the counterterrorism trainings contradicted OHS's cultural competency trainings offered by Plaintiff. Plaintiff notified Defendant Vedra that the contradictory messages caused confusion among law enforcement.

25.     Plaintiff also complained to OHS Director Vedra that U.S. Department of Homeland Security and OHS funds and grant monies were being used to pay for the trainings. Plaintiff stated that the unfounded allegations that Arabs and Muslims in Central Ohio had links to international terrorist organizations and the harassment and personal attacks against him were a "growing cancer" that threatened OHS's outreach work.

26.     During these discussions, Plaintiff called upon OHS Director Vedra to address Plaintiff's concerns about the biased and inflammatory trainings and the harassment against Plaintiff.

27.     Plaintiff also contacted the Office of Civil Rights and Civil Liberties at the U.S. Department of Homeland Security to discuss the biased and inflammatory "counterterrorism" trainings.

28.     During January of 2009, another workshop was conducted wherein inaccurate and nonfactual information was presented, specifically that all Muslims and Arabs were terrorists and/or terrorism sympathizers and should be treated as suspects. The training was funded by the U.S. Department of Homeland Security through grants distributed by OHS.

6

29.     In early 2010, the Columbus Police Academy held a three-day anti-terrorist training. On the first day of the training, the presenters attacked Plaintiff and OHS, labeling Plaintiff as a terrorist sympathizer. The presenters accused Plaintiff of being a "suspect," alleged that Plaintiff used his position within OHS to "connect with terrorists," and promised to "keep digging" into Plaintiff's background to "expose" him as a terrorist or terrorism sympathizer.

30.     After the training in early 2010, Plaintiff requested a meeting with Defendants, including, but not limited to, ODPS Legal Director Josh Engel and Defendant Vedra. During this meeting, Plaintiff again complained that this type of training directly contradicted the work of OHS's Multicultural Affairs and Community Engagement Office and the U.S Department of Homeland Security.

31.     In addition, Plaintiff complained that the presenters at the trainings had perpetrated a two-year campaign to harass and destroy Plaintiff's reputation and character based on the simple reason that he is an Arab Muslim. Plaintiff again stressed that U.S. Department of Homeland Security funds should not be used for trainings that advocated for and attempted to legitimize ethnic, racial and religious profiling of Muslims and Arabs. Plaintiff requested that Defendants stop these biased and inflammatory "counterterrorism" trainings, as well as the personal attacks on Plaintiff resulting therefrom.

32.     During the two-year campaign, the individuals involved with the "counterterrorism" trainings of Ohio's law enforcement personnel sought information from Plaintiff's personnel file and office via numerous public records requests to Defendant ODPS. Information obtained through the public records requests was published online and used to harass Plaintiff and pressure Defendants to terminate Plaintiff's employment:

7

a.   During 2008, ODPS's legal office received a letter attacking Plaintiff's work, including the brochure that Plaintiff authored, *Culture Guide to Arabic and Islamic Cultures*.

b.   On March 17, 2010, Plaintiff testified in front of the U.S. House of Representatives' Homeland Security Subcommittee on Intelligence, Information Sharing and Terrorism Risk Assessment on "Working with Communities to Disrupt Terror Plots." A member of the subcommittee attacked Plaintiff regarding the aforementioned guide.

c.   On March 18, 2010, a conservative online blog posted an article alleging that a two-page brochure authored by Plaintiff and published by OHS was "classic Islamist propaganda."

d.   On April 16, 2010 and April 19, 2010, the online blog posted additional articles attacking Plaintiff and Ohio Homeland Security.

33.   Rather than deal with Plaintiff's complaints and the perceived bad press that Defendants received as a result of Plaintiff's race, national origin/ethnicity and religion, Defendants terminated Plaintiff's employment on June 29, 2010 alleging that Plaintiff purposefully omitted Columbus State Community College ("CSCC") and, therefore, lied on his employment application.

34.   Defendant Vedra identified "the fact that he's of Arab descent" and OHS was "too focused on Arab[s]" as motivating factors for Plaintiff's termination.

35.   Defendants ignored Plaintiff's complaints regarding the use of U.S. Department of Homeland Security and OHS funds and grant monies to pay for training, on numerous

8

occasions, of Ohio law enforcement officers by individuals/groups that encouraged the unlawful and unconstitutional racial profiling and discriminatory treatment of Arabs and Muslims.

36.     Defendants ignored Plaintiff's complaints of being a target of anti-Arab and anti-Muslim individuals and/or groups who openly accused Plaintiff of being a terrorist and/or a terrorist sympathizer and using Plaintiff's picture as an example of a terrorist during Ohio law enforcement trainings paid for by funding and grant monies from U.S Department of Homeland Security and OHS.

37.     Defendants treated Plaintiff differently than other employees in the terms, conditions, and privileges of employment, including, but not limited to:

> a.     At the time of Plaintiff's investigation and termination due to an alleged omission on his employment application, Defendants also knew that Olen Martin, a white, non-Muslim employee listed two (2) educational degrees from Suffield University, a known diploma mill institution.
>
> b.     Defendants did not investigate, discipline, or terminate Mr. Martin for listing the alleged degrees, as education that he completed, on his employment application.

38.     At the time of Plaintiff's termination, Defendants had knowledge of the following:

> a.     From 1990 to 1996, Plaintiff was employed as a professor at Columbus State Community College (CSCC).
>
> b.     At the time of Plaintiff's initial hire with Defendant ODPS as a contractor, he provided a copy of his resume, which included numerous employment

9

experiences, including Plaintiff's employment at CSCC. Said resume disappeared from Plaintiff's personnel file.

c. In November 2005, Defendants, through the Ohio State Highway Patrol, conducted a background investigation on Plaintiff, wherein Plaintiff was questioned regarding his past employment, including Plaintiff's employment with and departure from CSCC.

d. On or about September 25, 2006, immediately before Plaintiff and other Ohio delegates were to leave for a month-long, relationship-building trip to six countries overseas, Plaintiff was summoned to meet with a Human Resources (HR) representative in Assistant Director of ODPS Gary Joseph's office to complete an application for the newly created full-time position, which he held for the year prior as a consultant. The HR representative advised Plaintiff that he did not need to list every prior employment experience because the application was a "formality" since he already held the position.

e. Plaintiff relied upon and complied with the instructions of the HR representative.

39.     On September 10, 2010, Plaintiff filed a charge of discrimination, Charge No. 532-2010-02063, with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on national origin/ethnicity and religion.

40.     On April 15, 2011, the EEOC issued Plaintiff a right to sue letter. (Attached as Exhibit 1).

### COUNT I: VIOLATION OF 42 U.S.C. § 2000e *et seq.*
### NATIONAL ORIGIN/ETHNICITY DISCRIMINATION

41.     Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-40 above as if fully rewritten here.

42.     Plaintiff is an Arab who legally immigrated to the United States from Jordan.

43.     Plaintiff was qualified for and competently performed his job as Multicultural Relations Officer of Ohio Homeland Security.

44.     Plaintiff suffered discrimination in the terms and conditions of his employment, including, but not limited to, an adverse employment action when Defendant ODPS, Defendant Stickrath and Defendant Vedra terminated his employment on June 29, 2010.

45.     Plaintiff was treated differently than Olen Martin and other similarly-situated employees outside the protected class.

46.     Defendant ODPS discriminated and retaliated against Plaintiff because of his national origin and ethnicity in willful, wanton and reckless disregard of his rights in violation of 42 U.S.C. §2000e *et seq.*, for which Plaintiff seeks compensatory, non-economic, and punitive damages, including, but not limited to, damages for emotional distress, interest, attorneys' fees and costs, against Defendant ODPS.

### COUNT II: VIOLATION OF 42 U.S.C. § 2000e *et seq.*
### RELIGIOUS DISCRIMINATION

47.     Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-46 above as if fully rewritten here.

48.     Plaintiff is Muslim.

49.     Plaintiff was qualified for and competently performed his job as Multicultural Affairs Director of Ohio Homeland Security.

50.     Plaintiff suffered discrimination in the terms and conditions of his employment, including, but not limited to, an adverse employment action when Defendant ODPS, Defendant Stickrath and Defendant Vedra terminated his employment on June 29, 2010.

51.     Plaintiff was treated differently than Olen Martin and other similarly-situated employees outside the protected class.

52.     Defendant ODPS discriminated and retaliated against Plaintiff because of his religion in willful, wanton and reckless disregard of his rights in violation of 42 U.S.C. §2000e *et seq.*, for which Plaintiff seeks compensatory, non-economic, and punitive damages, including, but not limited to damages for emotional distress, interest, attorneys' fees and costs, against Defendant ODPS.

### COUNT III: VIOLATION OF 42 U.S.C. § 1981
### RACE DISCRIMINATION

53.     Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-52 above as if fully rewritten here.

54.     Plaintiff is Arab and immigrated to the United States from Jordan.

55.     Plaintiff was qualified for and competently performed his job as Multicultural Affairs Director of Ohio Homeland Security.

56.     Plaintiff suffered discrimination in the terms and conditions of his employment, including, but not limited to, an adverse employment action when Defendant ODPS, Defendant Stickrath and Defendant Vedra terminated his employment on June 29, 2010.

57.     Plaintiff was treated differently than Olen Martin and other similarly-situated employees outside the protected class.

12

58.    The decision by Defendant Stickrath and Defendant Vedra to terminate Plaintiff's employment because of his race violated clearly established statutory and constitutional rights of which a reasonable person would have known.

59.    Defendants discriminated and retaliated against Plaintiff because of his race in willful, wanton and reckless disregard of his rights in violation of 42 U.S.C. §1981, for which Plaintiff seeks compensatory, non-economic, and punitive damages, including but not limited to damages for emotional distress, interest, attorneys' fees and costs.

## COUNT IV: VIOLATION OF 42 U.S.C. § 1981
## RETALIATION FOR OPPOSING DISCRIMINATION

60.    Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-59 above as if fully rewritten here.

61.    Plaintiff engaged in protected activity by complaining about biased and inflammatory counterterrorism trainings funded by the U.S. Department of Homeland Security through grants distributed by Ohio Homeland Security.

62.    Defendants had knowledge of Plaintiff's protected activity.

63.    Defendant ODPS, Defendant Stickrath and Defendant Vedra terminated Plaintiff's employment because of his complaints about the biased trainings being funded by the U.S. Department of Homeland Security.

64.    Plaintiff's termination from employment in retaliation for his complaints violated clearly established statutory and constitutional rights of which a reasonable person would have known.

65.    The retaliatory discharge of Plaintiff by Defendant ODPS, Defendant Stickrath and Defendant Vedra violates 42 U.S.C § 1981, for which Plaintiff seeks compensatory, non-

economic, and punitive damages, damages including but not limited to emotional distress, interest, attorney's fees and costs.

## COUNT V: VIOLATION OF 42 U.S.C. § 1983
## EQUAL PROTECTION

66.     Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-65 above as if fully rewritten here.

67.     Plaintiff is Muslim and Arab, and he immigrated to the United States from Jordan.

68.     Plaintiff was qualified for and competently performed his job as Multicultural Affairs Officer of Ohio Homeland Security.

69.     Plaintiff suffered discrimination in the terms and conditions of his employment, including, but not limited to, an adverse employment action when Defendant ODPS, Defendant Stickrath and Defendant Vedra terminated his employment on June 29, 2010.

70.     Defendant Stickrath and Defendant Vedra acted under color of state law when making the decision to terminate Plaintiff's employment.

71.     Plaintiff was treated differently than Olen Martin and other similarly-situated employees outside the protected class.

72.     Plaintiff's termination because of his race, national origin/ethnicity, and religion violated clearly established statutory and constitutional rights of which a reasonable person would have known.

73.     As a result of their unlawful conduct, Defendants deprived Plaintiff of his right to equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States under 42 U.S.C. §1983, for which Plaintiff seeks compensatory, non-economic, and punitive damages, including but not limited to damages for emotional distress, interest, attorney's fees and costs.

## COUNT VI: VIOLATION OF 42 U.S.C. § 1983
## FIRST AMENDMENT RETALIATION

74.     Plaintiff reasserts and reincorporates each and every allegation contained in ¶¶ 1-73 above as if fully rewritten here.

75.     Plaintiff engaged in constitutionally protected speech when he complained to Defendants and the U.S. Department of Homeland Security that the counterterrorism trainings being funded by the U.S. Department of Homeland Security through grants distributed by Ohio Homeland Security contained inaccurate and nonfactual information about Arabs and Muslims.

76.     Plaintiff's speech touched on matters of public concern because the trainings advocated for and attempted to legitimize ethnic, racial and religious profiling of Muslims and Arabs, in direct contradiction of U.S. laws, regulations and Constitution and the mission and purpose of Ohio Homeland Security's Multicultural Affairs Office and the U.S. Department of Homeland Security's Office for Civil Rights and Civil Liberties.

77.     Defendants terminated Plaintiff's employment because of his constitutionally protected speech.

78.     Plaintiff's termination from employment because of his constitutionally protected speech violated clearly established statutory and constitutional rights of which a reasonable person would have known.

79.     As a result of their unlawful conduct, Defendants deprived Plaintiff of his First Amendment rights under 42 U.S.C. §1983, for which Plaintiff seeks compensatory, non-economic, and punitive damages, including but not limited to damages for emotional distress, interest, attorney's fees and costs.

**WHEREFORE,** Plaintiff prays for judgment in his favor, punitive damages, compensatory and non-economic damages in an amount exceeding $500,000, reinstatement and/or front pay, attorneys' fees, costs, pre- and post-judgment interest, and any other relief to which he may be entitled.

Respectfully Submitted,

Laren E. Knoll (0070594)
The Knoll Law Firm, LLC
5248 Bethel Reed Park
Columbus, Ohio 43220
Telephone: 614-372-8890
Facsimile: 614-442-8718
Email: lknoll@knolllaw.com
*Trial Attorney for Plaintiff Omar Alomari*

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable by a jury.

Respectfully Submitted,

Laren E. Knoll (0070594)
The Knoll Law Firm, LLC
*Trial Attorney for Plaintiff Omar Alomari*

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Omar Alomari**
**448 Glenside Road**
**Powell, OH 43065**

From: **Cleveland Field Office**
**EEOC, AJC Fed Bldg**
**1240 E 9th St, Ste 3001**
**Cleveland, OH 44199**

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **532-2010-02063** | **Luisa Burgos,** **Investigator** | **(216) 522-7400** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Daniel Cabot_

**Daniel Cabot**
**Director**

APR 1 5 2011

(Date Mailed)

Enclosures(s)

cc: **Robert Young**
**Human Resources Administrator**
**Ohio Department of Public Safety**
**1970 West Broad Street, 3rd Floor**
**PO Box 182081**
**Columbus, OH 43218**

**Laren E. Knoll**
**4653 Trueman Boulevard**
**Suite 100**
**Hilliard, OH 43026**

Enclosure with EEOC
Form 161 (11/09)

Exhibit 1