UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**OMAR ALOMARI,**

    **Plaintiff,**

                                                    **Civil Action 2:11-cv-00613**
    v.                                       **Judge Algenon L. Marbley**
                                                    **Magistrate Judge Elizabeth P. Deavers**

**OHIO DEPARTMENT OF
PUBLIC SAFETY,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

On July 29, 2013, Plaintiff filed a Motion to Compel Discovery. (ECF No. 33.) On August 21, 2013, the Court issued an Opinion and Order disposing of one of the three issues raised in Plaintiff's Motion. (ECF No. 35.) At that time, the Court directed the parties to submit supplemental briefing and materials related to the remaining two issues. The parties have since done so, and the Court has reviewed the briefing and materials. (ECF Nos. 36 and 37.) For the reasons that follow, Plaintiff's Motion to Compel is **DENIED**.

### I.

The Court set forth the factual background of this case in its August 21, 2013 Opinion and Order. For ease of reference, the Court incorporates the same background here and will set out only those facts necessary to dispose of the remaining issues.

Defendants assert that ODPS terminated Plaintiff because he intentionally withheld from his employment application a position he held at Columbus State Community College ("Columbus State"). Plaintiff's employment at Columbus State allegedly ended following an

inappropriate relationship he shared with a female student.  The parties indicate that in 2010 various media outlets began to inquire of OHS and ODPS concerning Plaintiff's departure from Columbus State and his failure to list the position on his employment application.  In April 2010, ODPS prompted an administrative investigation into the circumstances surrounding Plaintiff's departure from Columbus State and his failure to disclose the position on his employment application.  The investigator, Kathleen Bourke-Botos, ultimately concluded that Plaintiff failed to provide accurate information on his employment application.  Defendants contend that they relied on the results of the investigation in deciding to terminate Plaintiff.  Plaintiff, on the other hand, asserts that Defendants' stated reason for terminating him is a pretext for racial and religious discrimination.

Plaintiff seeks an Order compelling testimony related to two meetings leading up to his termination that were held with ODPS' in-house counsel.[1]  He also seeks to depose ODPS' in-house counsel concerning their role in providing materials to the administrative investigator.  He asserts that this information will prove that Defendants' stated reason for terminating him is a pretext for discrimination and retaliation.  Defendants oppose Plaintiff's requests, primarily on the grounds of attorney-client privilege.

## II.

A.      **Standard for Attorney-Client Privilege**

As the Court indicated in its prior Opinion and Order, the attorney-client privilege is recognized as the oldest privilege relating to confidential communications. *Upjohn v. United*

---

[1] This Opinion and Order relates only to the second meeting between counsel and various officials at ODPS regarding the results of the administrative investigation.

*States*, 449 U.S. 383, 389 (1981).  Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.  *Id.*  In *Upjohn*, the United States Supreme Court explored the contours of the attorney-client privilege as it relates to corporate employees.  449 U.S. at 386-97.

The Sixth Circuit Court of Appeals articulated the following test to determine whether a communication is privileged: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] insistence permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) unless the protection is waived."  *Reed*, 134 F.3d at 355-56 (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

"[T]he mere fact that in-house counsel is present at a meeting does not shield otherwise unprivileged communications from disclosure."  *Neuder v. Battelle Pac. Nw Nat'l Lab.*, 194 F.R.D. 289, 293 (D.D.C. 2000).  Rather, the attorney-client privilege "applies only to communications made to an attorney in his capacity as legal advisor."  *Id.* at 292.  "Where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected."  *Id.* at 292.  In determining whether communications made in counsel's presence are privileged, courts have considered whether counsel serves dual roles for the corporation.  *Naik v. Boehringer-Ingelheim Pharm., Inc.*, No. 07-c-3500, 2008 WL 4866015, *2 (N.D. Ill June 19, 2008) (concluding that communications were not privileged, partly because "there is no suggestion that BIPI's in-house counsel was serving on a committee charged with

considering employment issues").

"The burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 188 F.3d 663, 667 (6th Cir. 1999). Simply asserting that information is privileged "is insufficient to meet the burden." *In re Trans-Indus.*, No. 1-10 MC 24, 2011 WL 1130410, *4 (N.D. Oh. Mar. 28, 2011). Rule 26 of the Federal Rules of Civil Procedure requires a party who seeks to withhold otherwise discoverable information on the basis of privilege to assert a claim of privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable to the other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (citing *In re Search Warrant Executed at Law Offices of Stephen Garea*, No. 97-4112, 1999 WL 137499 (6th Cir. Mar. 5, 1999) ("The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice.").

Two issues remain related to Plaintiff's July 29, 2013 Motion to Compel.[2] Specifically, Plaintiff seeks an Order compelling (1) testimony related to the substance of a June 2010 meeting concerning the results of the administrative investigation; and (2) the depositions of three attorneys who were in-house counsel for ODPS at the initiation of the administrative investigation.

**B.  June 2010 Meeting**

---

[2]The Court recognizes that Plaintiff has filed an Objection to the August 21, 2013 Opinion and Order. At least in that sense, the third issue remains pending as well. (ECF No. 38.)

4

Plaintiff first seeks an Order compelling testimony concerning discussions that occurred during a June 2010 meeting that the then-director of ODPS called to determine how to proceed in light of the results of the administrative investigation.  In addition to the director, the assistant director of ODPS, a member of human resources, a member of administration, Plaintiff's supervisor, the deputy chief of staff of public safety, and ODPS then-Chief Legal Counsel attended the meeting. (Vedra Dep. 53:15-23, Op. Ex. 2, ECF No. 34-2.)  Plaintiff's supervisor testified that during the meeting they reached a "consensus or [] decision" to terminate Plaintiff. *Id.* at 57:19-23.  Plaintiff seeks to discover how those in attendance reached the decision to terminate him, and maintains that the mere presence of counsel is insufficient to trigger the attorney-client privilege.

In its August 21, 2013 Opinion and Order, upon concluding that the record contained insufficient evidence to determine whether the contents of the meeting are privileged, the Court directed Defendants to submit for *in camera* inspection an affidavit setting forth the substance of the discussions that occurred at the meeting.  Defendants submitted an affidavit of ODPS' counsel, Heather Reed Frient.  The Court concludes, based upon a thorough review of the affidavit and the parties' arguments, that the purpose of the meeting was to secure Ms. Frient's legal advice related to the results of the administrative investigation.  Without disclosing the content of the privileged communications, the Court is satisfied the discussions that occurred during the meeting center on the solicitation and rendering of legal advice.  Ms. Frient's affidavit additionally demonstrates that the communications were made to her in her capacity as legal advisor.  Accordingly, Plaintiff's request to compel testimony related to the June 2010 meeting is **DENIED**.

C.   **Depositions of ODPS in-house counsel**

Finally, Plaintiff seeks to compel the depositions of three attorneys, Heather Reed-Frient, Krista Weida and Josh Engel, all of whom served as ODPS' in-house counsel at the time ODPS initiated the administrative investigation. As the Court recognized in its prior Opinion and Order, Columbus State purportedly provided a hand-written settlement agreement to counsel reflecting that Plaintiff was permitted to resign from his position. Bourke-Botos, however, never received that agreement. Relying on other documents that counsel provided, Bourke-Botos ultimately concluded that Plaintiff lied when he stated that he resigned from Columbus State. In the instant Motion, Plaintiff seeks to depose ODPS' counsel to determine why they failed to provide the purportedly exculpatory settlement agreement to Bourke-Botos.

In its prior Order, the Court directed the parties to brief whether the three-prong *Shelton* test applies to Plaintiff's request to depose ODPS' counsel. *See Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) (setting forth a three-part test which, in some cases, precludes depositions of opposing party's counsel). That test begins with the recognition that the Federal Rules of Civil Procedure generously permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). Consistent with the Rules' liberal stance on discovery, Fed. R. Civ. P. 30(a)(1) provides that: "[a] party may, by oral questions, depose *any person*, including a party, without leave of court . . . ." (emphasis added). The Sixth Circuit has adopted the three-part test articulated in *Shelton*, limiting this presumption of openness in discovery in instances when the deponent is opposing trial/litigation counsel:

Discovery from an opposing counsel is "limited to where the party seeking to take

> the deposition has shown that (1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton*, 805 F.2d at 1327 (citation omitted)).

Prior to setting forth the three-part test, the *Shelton* court declared: "We do not hold that trial counsel is absolutely immune from being deposed.  We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition." *Id*. at 1327. Further, in concluding that opposing counsel could not be deposed under the circumstances presented in that action, the *Shelton* court specifically noted that: "[i]n-house counsel in this case had nothing to do with this lawsuit except to represent her client."  805 F.2d at 1330.

The Eighth Circuit revisited this issue in *Pamida, Inc. v. E.S. Originals*, 281 F.3d 726 (8th Cir. 2002).  *Pamida* involved a suit against a manufacturer seeking indemnification for attorney's fees and costs incurred in defending an underlying, completed patent infringement suit.  281 F.3d at 728.  The *Pamida* Court identified the principle rationales driving *Shelton*:

> *The* Shelton *test was intend* [sic] *to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy.*  Because this abuse of the discovery process had become an ever increasing practice, this Court erected the *Shelton* test as a barrier to protect trial attorneys from these depositions.  But *Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial.  In such circumstances, *the protection* Shelton *provides to opposing counsel only applies because opposing counsel is counsel in the instant case and not because opposing counsel had represented the client in the concluded case*.

*Id*. at 730-31 (citations omitted) (emphasis added).  Thus, *Padima* suggests that *Shelton* applies when: (1) the deponent is either trial/litigation counsel in the instant case; and (2) the information

7

sought would expose litigation strategy in the pending case. *See id*.

This Court considered the contours of *Shelton* and *Pamida* in *Williams v. Wellston City Sch. Dist.*, No. 2:09-cv-566, 2010 WL 4513818 (S.D. Oh. Nov. 2, 2010). The plaintiff in *Williams*, a former elementary school principal, filed a civil rights action against the school district, the plaintiff's former employer, after the school board caused the results of a fitness-for-duty examination to become public. *Id.* at *1. The plaintiff alleged that the results of the fitness-for-duty examination contained false information that an attorney hired by the school district provided to the school board. Specifically, the attorney analyzed the hard drive from the plaintiff's work computer and concluded, incorrectly according to the plaintiff, that it contained inappropriate images and files that rendered the plaintiff unfit to continue as an educator and administrator. *Id.* at *1-2. In the subsequent civil rights action, the plaintiff sought to depose the attorney concerning his analysis of the hard drive. The defendant opposed the plaintiff's request, contending that *Shelton* applied.

In deciding whether *Shelton* applied, this Court examined the reasoning behind the heightened test for deposing opposing counsel:

> [O]ne of the motivating factors behind *Shelton* . . . is the need to protect an opposing party's litigation strategy. When the attorney whose deposition is requested is not litigation counsel, is not in-house counsel who is involved to some extent in directing litigation, or is not an attorney who has advised the client concerning the same or similar litigation or has helped develop its defense strategy, the reasons for applying *Shelton* are much less compelling because there is little or no risk that the attorney's testimony might reveal any litigation strategy . . . .

*Id.* at *5. Applying that standard, this Court held that *Shelton* did not apply to the plaintiff's request to depose the attorney. In so holding, the Court emphasized that the attorney "is not and

8

never has been litigation counsel for the defendant in this case, nor has his former law firm . . . served in that capacity." *Id.* at *5.  In addition, the Court noted that there was "no evidence that [counsel] has consulted with the defendants about the issues in this litigation . . . or about the defense strategy in this case." *Id.*  Finally, counsel in that case did not share "a current attorney-client relationship with any of the defendants." *Id.*

Conversely, where allowing an opposing party to depose counsel might expose litigation strategy in the subject case, this Court has held that *Shelton* applies.  *See Fresenius Med. Care Holdings, Inc. v. Roxane Lab., Inc.*, No. 2:05-cv-889, 2007 WL 543929, *4-5 (S.D. Oh. 2007) (applying *Shelton* to a party's request to depose in-house counsel); *see also Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 309-310 (S.D. Oh. Oct. 7, 2010) (applying *Shelton* without discussion to a request to depose in-house counsel).  Likewise, this Court's sister-district has held that *Shelton* applies where a party seeks to depose an in-house attorney who had been "intimately involved in [the] dispute since well before it blossomed into a lawsuit" and who had "played an integral role in developing . . . litigation strategy." *Massillon Management, LLC v. Americold Realty Trust*, No. 5:08-cv-799, 2009 WL 614831, *5 (N.D. Oh. Jan. 21, 2009).

Considering the foregoing authority, the Court concludes that *Shelton* applies to Plaintiff's request to depose ODPS counsel.  First, the attorneys Plaintiff seeks to depose served as in-house counsel in this case.  Unlike in *Williams*, the three attorneys Plaintiff seeks to depose were "intimately involved in [this] dispute since well before it blossomed into a lawsuit." *Massillon*, 2009 WL 614831, at *5. Indeed, Plaintiff seeks to question the attorneys concerning events – and their own conversations between themselves – directly related and relevant to this case, namely the investigation that resulted in Plaintiff's termination.  Furthermore, it is

9

indisputable that the attorneys Plaintiff seeks to depose, all of whom were involved in the initiation of the investigation that led to Plaintiff's termination, "played an integral role in developing [] litigation strategy" in this case. *Id.* This is particularly true with regard to Reed-Frient, as she was the attorney upon whom Defendants relied for legal advice when they decided to terminate Plaintiff in light of the results of the investigation. Consequently, deposing the three attorneys, particularly concerning the early stages of this litigation, would pose the exact risk that *Shelton* is meant to prevent. *See Williams*, 2010 WL 4513818, *4 (citing *Pamida*, 281 F.3d at 730-31) ("[T]he evils which led the *Shelton* court to develop the heightened test for deposing opposing counsel [are] present [] when the scope of the deposition include[s] the ongoing litigation . . . ."). In addition, attorney Reed-Frient, unlike counsel at issue in *Williams*, shares "a current attorney-client relationship with [] the defendants," which further threatens to expose litigation strategy associated with this case. *Id.* at *5.

In reaching the conclusion that *Shelton* applies, the Court emphasizes that Plaintiff seeks to question counsel regarding the event that gave rise to his termination, namely the administrative investigation, which goes to the heart of this case. This situation is thus distinguishable from *Pamida*, where the scope of the discovery sought did not relate to the ongoing litigation. *See Pamida*, 281 F.3d at 730-31 (holding that the party requesting the attorney's deposition "need not satisfy *Shelton* to depose the . . . attorneys regarding information involving the concluded patent infringement case"). In light of counsel's involvement in this action well before it blossomed into a lawsuit, as well as the danger that the depositions would expose counsel's litigation strategy, *Shelton* applies.

Plaintiff's contrary arguments are not well taken. First, Plaintiff asserts that "there is no

10

indication that any of the in-house counsel played any role in ODPS' litigation strategy." (P.'s Supp. Br. 3, ECF No. 36.) As set forth above, however, Defendants turned to attorney Freed-Freint for legal advice related to their decision to terminate Plaintiff. Similarly, the other two attorneys Plaintiff seeks to depose were involved in acquiring and handling documents related to the investigation that led to Plaintiff's termination. Thus, the Court concludes that counsel were involved in, indeed responsible for, ODPS' litigation strategy in this case.

Plaintiff next attempts to distinguish *Shelton* on the grounds that counsel in this case merely collected documents from a third-party to aid in ODPS' investigation. Unlike *Shelton*, according to Plaintiff, counsel's collection and review of documents in this case did not involve any strategy. Even if the mere collection of the Columbus State documents did not involve legal strategy, however, discussions concerning the investigation, the results of the investigation, and the decision to terminate Plaintiff most certainly did. Consequently, the depositions would pose the risk of revealing counsel's strategy in this case.

Finally, Plaintiff asserts that *Shelton* does not apply because the information he seeks to discover from counsel is not subject to the attorney-client privilege. (P.'s Supp. Br. 5, ECF No. 36.) The question of whether *Shelton* applies, however, does not depend on whether the information sought is privileged. Rather, *Shelton* applies to (1) requests to depose counsel in this case; where (2) the depositions would risk disclosure of counsel's litigation strategy. *Pamida*, 281 F.3d at 730-31. Both of those threshold inquiries are satisfied here. *Shelton* thus applies. Accordingly, in order to go forward with the depositions, Plaintiff must establish the three prongs of the *Shelton*-test. For the reasons that follow, he cannot meet his burden.

First, Plaintiff cannot demonstrated that no other means exist to obtain the information

than to depose counsel. *Shelton*, 805 F.2d at 1327. Other witnesses, including, for example, Columbus State personnel, can testify as to what documents Columbus State provided to ODPS, as well as ODPS' attempts to acquire documents. Presumably ODPS officials, including the investigator, would also have some insight into ODPS' efforts to obtain documents from Columbus State. Second, although Plaintiff indicates generally that whether counsel withheld purportedly exculpatory materials from the investigator is relevant, he has not demonstrated how such information is crucial to the preparation of his case, as *Shelton* requires. [3]  *Id.* Accordingly, particularly because Plaintiff can obtain the information he seeks from other sources, the Court concludes that Plaintiff cannot meet his burden under *Shelton*. His request to depose ODPS counsel is, therefore, **DENIED**.

### III.

Accordingly, Plaintiff's Motion to Compel is **DENIED**.

**IT IS SO ORDERED**.

Date: September 13, 2013                                   /s/ *Elizabeth A. Preston Deavers*
                                                            Elizabeth A. Preston Deavers
                                                            United States Magistrate Judge

---

[3] Apparently because of his position that *Shelton* does not apply, Plaintiff did not address the three *Shelton* factors in his briefing.